**HEBERLEIN PATENT CORPORATION v. UNITED STATES.**

No. 332.

Circuit Court of Appeals, Second Circuit.

July 17, 1939.

John T. Cahill, U. S. Atty., of New York City (Robert E. Pratt, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Engelhard, Pitcher & Amann, of New York City (George H. Engelhard, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the United States from a judgment entered in an action by Heberlein Patent Corporation, hereinafter called Patent Corporation, against the government for a refund of income taxes alleged to have been erroneously assessed and unlawfully collected. Judge Bondy, who conducted the trial in the district court, dismissed the first, second and third causes of action of the petition for lack of jurisdiction and granted recovery on the remaining four causes of action to the amount of $27,253.94.

The question raised by this appeal is whether the proper basis for an allowance of annual depreciation in respect to certain patents acquired by Patent Corporation in exchange for the issue of its stock was their cost to that corporation, as the trial judge held, or was their cost to its transferors Heberlein & Company A. G., Georges Heberlein and Eduard Heberlein. The appellant contends that the correct basis for an allowance of depreciation was cost to the transferors because immediately after the transfer they were in control of the Patent Corporation.

The district judge found that the cost of the patents to the Patent Corporation was $972,471.16 and that the proper annual allowance for depreciation was $60,026.16 which he allowed for the years 1928, 1929, 1930 and 1931. His figures are not questioned provided it be held that he adopted the right basis. His refusal to accept cost to the transferors, which was $198,403, rather than $972,471.16, as the basis for computing depreciation is the gist of the government's criticism of the judgment awarding the refund.

The provisions of the Revenue Act of 1928 which govern depreciation in a case like the present are the following:

Section 114. "(a) *Basis for Depreciation*. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain·or loss upon the sale or other disposition of such property." 26 U.S.C.A. § 114 note.

Section 113. "(a) *Property Acquired After February 28, 1913*. The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that * * *

"(8) * * * If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) * * *, then the basis shall be the same as it would be in the hands of the transferor; * * *." 26 U.S.C.A. § 113 note.

Section 112 (b). "(5) *Transfer to corporation controlled by transferor*. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." 26 U.S.C.A. § 112(b) (5).

Section 112. "(j) *Definition of control*. As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." 26 U.S.C.A. § 112(h).

As the government says in its brief the effect of these statutes is to provide that the basis for depreciation of property shall be its cost except that where stock of a corporation is issued for property and immediately after the exchange the transferor or transferors are in control of the transferee corporation by virtue of ownership of 80 per centum or more of its stock, then the basis for depreciation is the cost to the transferors, providing, however, that where two or more persons transfer property and immediately afterwards are in control of the corporation their ownership of stock must be substantially in proportion to their interest in the property transferred. The government contends that the transferors to Patent Corporation of patents and patent applications involved in this suit held more than 80 per centum of the stock of that corporation immediately after the transfer and were, therefore, at that time in control of Patent Corporation within the meaning of Section 112(b) (5) of the Revenue Act of 1928. If this be so depreciation should have been computed upon the cost of the patents and patent applications to the transferors, rather than upon the cost to Patent Corporation, the taxpayer. The latter, however, contends that immediately after the transfer the transferors held less than 80 per centum of the stock of Patent Corporation and, therefore, were not in control. We think that the evidence shows that the court below was right in adopting the contention of the taxpayer and that the judgment should accordingly be affirmed.

In the year 1920 Georges Heberlein, the general manager of Heberlein & Company A. G., a Swiss corporation, and Eduard Heberlein held title to six United States patents for the finishing of textiles. Desiring to license textile finishers under the patents, Georges Heberlein and Hugo Heberlein, who was the president of Heberlein & Company A. G., came to this country in January, 1921, at the suggestion of F. August Schroeder, and commenced negotiations to that end with the Bellman Brook Bleachery Company (hereinafter called Bellman Brook) a domestic textile finishing concern. Prior to March 16, 1921, Heberlein & Company A. G. had acquired by assignment from Georges and Eduard Heberlein the ownership·of the six patents.

On March 16, 1921, Heberlein & Company A. G. entered into a written agreement with Bellman Brook whereby the former was to have incorporated a patent holding company having an authorized issue of 10,000 shares of stock of no par value and of one class and was to assign to such holding company, in consideration for the issue of all of the stock, the six above-mentioned patents (of which Heberlein & Company A. G. and Georges Heberlein warranted that Heberlein & Company A. G. was the owner) and all United States patents or rights thereunder that it or Georges Heberlein had acquired, or might acquire, either for improvements upon any of the inventions of the six patents or for fabrics described therein or in the improvement patents.

The agreement also provided that Heberlein & Company A. G. should cause the stock to be promptly issued to it and should thereafter promptly transfer to Bellman Brook 500 shares thereof; also that upon the organization of the Patent Corporation and the transfer to it of the various patent rights above referred to, Heberlein & Company A. G. should cause the Patent Corporation to deliver to Bellman Brook certain licenses which had been agreed upon for exploitation of the patent rights.

Prior to the execution of the above agreement F. August Schroeder, who was at the time designated by Hugo Heberlein and Georges Heberlein as their agent to incorporate the holding company, had received certain instructions from Hugo and Georges Heberlein with respect to the disposition of the 10,000 shares of stock of the Patent Corporation. Schroeder testified that the oral instructions were to dispose of the 10,000 shares in the following manner:

6,975 shares to Heberlein & Company A. G.,
500 shares to Hugo Heberlein,
500 shares to Georges Heberlein,
500 shares to Eduard Heberlein,
500 shares to Charles Spach,
250 shares to Kuno Heberlein,
250 shares to F. August Schroeder,
25 shares to Frederick R. Ryan and
500 shares to Bellman Brook Bleachery Company.

The Patent Corporation was organized in June, 1921, with an authorized capital stock of 10,000 shares and on April 5, 1922, certain patents and patent applications were assigned to the Patent Corporation in accordance with the agreement. These assignments probably covered all of the patents and patent applications standing in the names of Heberlein & Company A. G., Georges Heberlein or Eduard Heberlein. Pending applications for patents filed by Georges Heberlein and Eduard Heberlein culminated in the issue of the patents by the Patent Office on December 19, 1922, to Heberlein Patent Corporation as assignee of the inventors. That is to say, the Patent Corporation obtained the transfer of the patents last named directly from the inventors and not from Heberlein & Company A. G. The assignment of patent rights that might be acquired by Heberlein & Company A. G. or Georges Heberlein in the future was not made until later. On December 23, 1922, Heberlein & Company A. G. and Georges Heberlein executed a formal contract wherein they agreed to assign to the Patent Corporation all United States patents or rights which they might thereafter acquire either for improvements upon any of the inventions of the six patents or for fabrics described therein or in the improvement patents, and forwarded the same from Switzerland to the Patent Corporation which received it in New York in early January 1923. This instrument dated December 23, 1922, was the first agreement made by Heberlein & Company A. G. or Georges Heberlein with the Patent Corporation to assign future patent rights to the latter as provided in the contract of March 16, 1921, between Heberlein & Company A. G. and Bellman Brook. It was also the first and only agreement appearing in the record binding Georges as a party to assign future rights to Patent Corporation.

In connection with the proposed issue of stock Heberlein & Company A. G. forwarded to Schroeder from Switzerland certain stock transfer powers executed by it assigning stock in the Patent Corporation to the persons and in the amounts mentioned in the former oral instructions. Five of these transfer powers assigning 1,525 shares in the aggregate arrived from Switzerland prior to the receipt of the agreement of December 23, 1922. The date of receipt was doubtless about December 6, for that was the date inserted in the five stock powers and in the first seven stock certificates mentioned in the next paragraph. Three stock transfer powers assigning 500 shares each to Georges, Eduard and Hugo Heberlein respectively

arrived afterwards but prior to January 27, 1923.

Under date of December 6, 1922, certificate of Patent Corporation No. 1 for 10,000 shares was made out to Heberlein & Company A. G. by the attorney who was advising Schroeder in connection with the formation of the Patent Corporation and at the same time five certificates were made out in accordance with the five stocktransfer powers first received as follows:

500 shares to Bellman Brook
25 shares to Frederick R. Ryan
250 shares to F. August Schroeder
250 shares to Kuno Heberlein
500 shares to Charles Spach.

Another certificate No. 7 for 8,475 shares, also dated December 6, 1922, was made out to Heberlein & Company A. G. None of the foregoing certificates was signed until January 27, 1923. Certificate No. 1 was never removed from the stock book and was never intended to represent a distribution of shares. It was originally made out to show upon the records of Patent Corporation a literal compliance with the provisions of the agreement of March 16, 1921, between Heberlein & Company A. G. and Bellman Brook and took no account of the original instructions to Schroeder respecting the distribution of the shares. Certificate No. 7 was evidently a mistake. It was never issued or delivered and was marked "Void" as soon as it was signed.

On January 27, 1923, when all of the certificates were signed, Schroeder caused certificates to be executed completely distributing the stock in accordance with the oral instructions of March, 1921, and with the stock transfer powers which he had received. This step necessitated making out on January 27, 1923, four new certificates as follows:

500 shares to Eduard Heberlein
500 shares to Georges Heberlein
500 shares to Hugo Heberlein
6,975 shares to Heberlein & Company, A. G.

These certificates with the 1,525 shares issued to Bellman Brook, Ryan, Schroeder, Kuno Heberlein and Spach already mentioned made up the total of 10,000 shares to be distributed.

It is evident from the foregoing that no certificates were issued prior to January 27, 1923, and that the issue then made was in accordance with the oral instructions

found to have been given to Schroeder in March, 1921. That distribution gave to the transferors less than 80% of the stock of Patent Corporation.

The government argues that the issue of the certificates did not determine whether the transferors of the patent rights were in control of the Patent Corporation immediately after the exchange of the property for the stock. If that contention be admitted, nevertheless the proof showed that Heberlein & Company A. G., Georges Heberlein and Eduard Heberlein were actually the transferors as the court below ·found. Even if it could be said that they obtained "control" upon the transfer in January, 1923, of the final consideration for the shares (see United States Radiator Corp. v. State of New York, 208 N.Y. 144, 150, 101 N.E. 783, 46 L.R.A.,N.S., 585) Eduard Heberlein only received 500 shares or 5% of the stock of Patent Corporation in exchange for his linen patent assigned directly by him and proved to have been worth $499,121.80, as compared with 90% of the stock issued in exchange for patents and patent rights transferred by Heberlein & Company A. G. and Georges Heberlein valued at $473,349.36. Accordingly the stock Eduard received was not in proportion to his interest, Section 112(b) (5) of the Revenue Act would not apply, and depreciation would, therefore, have to be computed upon the cost of the property to the Patent Corporation.

It is argued by the government that Heberlein & Company A. G. were to get all the stock ·of Patent Corporation in the first place and that the distribution to the others, except Bellman Brook, was by way of gift unenforceable prior to the transfer of the certificates. We can see no ground ·for this as respects Georges and Eduard Heberlein, who transferred valuable patents or patent rights standing in their own names. But whether or not the stock was to be issued to Heberlein & Company A. G. in the first place, the consideration was not completely furnished until December 23, 1922, for not until then was there a contract between Patent Corporation and Heberlein & Company A. G. and Georges Heberlein that the latter would assign to Patent Corporation, as agreed in March 1921, all the patents and rights which they might thereafter acquire. Prior to December· 23, 1922, transfer powers had come forward executed by Heberlein & Company A. G. assigning 1,525 shares to

Bellman Brook, Ryan, Schroeder, Kuno Heberlein and Charles Spach. The delivery of these powers effected a transfer to the assignees therein either by gift or for consideration. De Caumont v. Bogert, 36 Hun 382. Thus at the time the rights to the stock first arose the 1,525 shares, together with the 500 shares each to which Eduard and Georges had enforceable rights, left less than 80% of the stock in Heberlein & Company A. G. alone. Likewise the 1,525 shares, together with the 500 shares to which Eduard had enforceable rights, left less than 80% of the stock in Heberlein & Company A. G. and Georges Heberlein.

Whether the exchange be regarded as made on December 23, 1922, when the consideration was furnished, or January 19, 1923, when the board of directors of the Patent Corporation ordered the issue of the 10,000 shares against the patent rights acquired, or January 27, 1923, when the certificates were executed (or even on April 5, 1922, as the government has erroneously contended), the transferors did not have 80% of the stock. This is so whether the transferors were Heberlein & Company A. G. alone, or Heberlein & Company A. G. and Georges Heberlein, or Heberlein & Company A. G., Georges Heberlein and Eduard Heberlein, as the court below, and we think correctly, found. The steps of a reorganization like the present cannot be treated separately. From the beginning it was arranged that the stock was to be so distributed that the transferors of the patents were not to retain control of the taxpayer and that arrangement was carried out exactly. The transferors were far away in Europe and only a month intervened between December 23, 1922, the time when the consideration completely passed to Patent Corporation, and January 27, 1923, when all the certificates of stock were signed. An interval so brief in view of the separation of the principals in Switzerland from Schroeder who was organizing the Patent Corporation in New York indicated no hesitation in carrying out the reorganization of the properties of the transferors. Treating the transaction as a whole, the exchange did not result in control by the transferors and Section 112 (b) (5) did not apply. Hazeltine Corporation v. Commissioner, 3 Cir., 89 F.2d 513; Bassick v. Commissioner, 2 Cir., 85 F.2d 8; Halliburton v. Commissioner, 9 Cir., 78 F.2d 265; West Texas Refining & Development Co. v. Commissioner, 10 Cir.,

68 F.2d 77. When the transfers of the property and the distribution of the stock were so closely related in time and the distribution made was by virtue of a prior arrangement, we think it made no difference that some of the distributees were donees rather than purchasers of the stock.

Judgment affirmed.