## WILGARD REALTY CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 44.

Circuit Court of Appeals, Second Circuit.

April 29, 1942.

David A. Fraser, of Syracuse, N. Y., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Harry Marselli, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The controversy is over the basis the petitioner is entitled to use in determining its gain or loss for income tax purposes on the sale of some real estate it made in 1937. It had acquired this property in 1932 from an individual who had organized the petitioner for the purpose of transferring the property to it in exchange for what amounted to all of its stock together· with its assumption of the transferor's liability on a debt secured by two mortgages on the real estate. The transferor intended when the transfer was made to give away about three-fourths of the stock he received and did so on the same day as will presently more fully appear. The first question is whether his intent to give, so carried out, prevented the transferor's being in control of the petitioner immediately after the exchange within the meaning of § 112 (b) (5) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 855. If so, the petitioner is right in its contention that the exchange was not tax free by virtue of the above statute and that it accordingly need not compute its gain or loss on the sale in 1937 by taking its transferor's basis as § 113 (a) (8) of the 1936 Act, 26 U.S.C.A. Int.Rev.Acts, page 862, would require it to do if the exchange were tax free. The second question comes up only if the petitioner is wrong in its first position. It is whether § 213 (f) of the Revenue Act of 1939, 26 U.S.C.A. Int.Rev.Acts, page 1177, which in terms makes § 112 (b) (5) apply to this exchange even though the transferor's liability on his debt was assumed by the transferee, violates the Fifth Amendment when applied retroactively as its language clearly shows that Congress intended to have it applied.

The material facts were found by the Board, following a stipulation of the parties, to be as follows:

"Petitioner is a corporation duly organized under the laws of New York, with its principal office at 215 W. Fayette Street, Syracuse, New York.

"In July 1906 W. H. H. Chamberlin acquired certain properties at 113-117 W. Fayette Street, Syracuse, New York, at a total cost of $45,000, of which $20,000 was paid in cash and the remainder by a purchase money mortgage in the sum of $25,-000. Chamberlin rebuilt the property in 1907, erecting a five-story brick building to house his printing and stationery business, at a cost of $25,000, which was financed by placing an additional mortgage on the property in that amount.

"The petitioner was organized by Chamberlin on August 12, 1932, with an authorized capital stock of 200 common shares with no par value. On August 16 following, Chamberlin conveyed to petitioner the property described above and a special building bank account of $18.60 in return for its issuance to Chamberlin of 197 shares of its capital stock and the agree-

ment by petitioner to pay the two mortgages on the property, on which the principal sum of $35,000 remained unpaid. The remaining three shares of petitioner's common stock were issued, without consideration, to three individuals and were acquired immediately from them by Chamberlin for a consideration of $1 per share. On the same date as these transactions, Chamberlin, on receipt of the stock of petitioner, made a gift of 156 shares of the stock, transferring without consideration 39 shares each to his brother and his three children, all of whom were of full age. Additional gifts of a single share to each of these donees were made on April 27, 1937.

"The basis of the property in the hands of W. H. H. Chamberlin at the time of the transfer to petitioner was its fair market value on March 1, 1913, which was, after adjustment for depreciation, $65,041.67. The property had a fair market value of $110,000 on August 16, 1932.

"On February 18, 1937, the petitioner sold the property here in question for $19,000 cash and the purchaser assumed and agreed to pay the two mortgages on the property still remaining unpaid in the principal sum of $35,000. From the date of the acquisition of this realty by the petitioner to the date of its sale depreciation was allowed and allowable in the amount of $8,475. The expense of the sale was $3,925.04.

"Petitioner was voluntarily dissolved on July 13, 1937."

Though it was plainly enough Mr. Chamberlin's intention to create the petitioner and to transfer his property to it for its stock and the assumption of his liability on the two mortgages in order to provide him with stock to give as he did to his relatives, he was under no obligation to make the gift. There is neither claim nor proof that he was bound to carry out his intention to give any of it away when he received the stock or that he was not free at any time up to the very moment he gave it away to change his mind and use it for any lawful purpose. This would, of course, include the use of it to control the petitioner for as long as he desired by virtue of stock ownership far in excess of the 80 per centum made enough under the statutory definition of control found in § 112 (h) of the Act.

In the absence of any restriction upon his freedom of action after he ac-quired the stock, he had "immediately after the exchange" as much control of the petitioner as if he had not before made up his mind to give away most of his stock and with it consequently his control. And that is equally true whether the transaction is viewed as a whole or as a series of separate steps. The transferor's freedom, at the time he acquired it, to keep the stock for himself is the basic distinction between this case and those like Bassick v. Commissioner, 2 Cir., 85 F.2d 8; Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513; Heberlein Patent Corp. v. United States, 2 Cir., 105 F.2d 965, upon which the petitioner relies. In those cases the recipient of the stock on the exchange had, as a part of the transaction by which it was acquired, foregone or relinquished the right to have such control as its ownership would give and was bound upon receipt of the stock to dispose of it as previously arranged. But where the recipient of the stock on the exchange has not only the legal title to it "immediately after the exchange" but also the legal right then to determine whether or not to keep it with the control that flows from such ownership, the requirements of the statute are fully satisfied. It is immaterial how soon thereafter he elects to dispose of his stock by gift or otherwise and whether or not such disposition is in accord with a preconceived plan not amounting to a binding obligation. Consequently, the petitioner took the basis of Mr. Chamberlin if the exchange was otherwise within § 112 (b) (5).

Even though the petitioner was in the control of the transferor immediately after the exchange in 1932, the exchange was not a tax free one under the law as it was when the sale was made in 1937 because, as the Supreme Court decided in 1938, the assumption of the transferor's debt made the exchange of the property one not only for stock but for the equivalent of other property or money as well. United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018. However, Congress passed § 213 (f) (1) of the Revenue Act of 1939 to do away with this effect of the above decision and if it may lawfully apply to this exchange, as in terms it does, the exchange must be held tax free and the petitioner must use its transferor's basis in computing its gain or loss on the sale in 1937. § 113 (a) (8). This statute was intended to be retroactive as its language shows. See D. W. Klein Co. v. Commis-

sioner, 7 Cir., 123 F.2d 871, 876, 877. The only question the petitioner raises in this phase of the case is whether Congress had the power to do what it tried to do.

The retroactivity of taxing statutes does not necessarily make them unconstitutional. Brushaber v. Union Pacific R. R., 240 U.S. 1, 20, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Lynch v. Hornby, 247 U.S. 339, 343, 38 S.Ct. 543, 62 L.Ed. 1149; Cooper v. United States, 280 U.S. 409, 411, 50 S.Ct. 164, 74 L.Ed. 516; Welch v. Henry, 305 U.S. 134, 146, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142. Following Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081, however, the placing of unforeseeable gift taxes on completed gifts has been considered so unfair and arbitrary as to be a denial of due process since such donors are given no chance to elect whether or not to give in view of the tax. Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80. But such invalidity does not attend a gift tax merely because it is retroactive and when a donor has reason to anticipate that such a tax may be laid, the taxing statute may be given retroactive effect without being too oppressive to be unconstitutional. Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 75 L.Ed. 809. The decisive test in this instance is whether this taxpayer has had its expectations as to taxation unreasonably disappointed. Sometimes the extent of permissible retroactivity can be measured with sufficient certainty in terms of time. As for instance, the "recent transactions" as to which a retroactive tax law might be valid under Cooper v. United States, 280 U.S. 409, 411, 50 S.Ct. 164, 74 L.Ed. 516, were in Welch v. Henry, supra, at page 150 of 305 U.S., at page 127 of 59 S.Ct., 83 L.Ed. 87, 118 A.L.R. 1142, "taken to include the receipt of income during the year of the legislative session preceding that of its enactment." Taxpayers must expect that fundamental changes in tax laws may be made at any time in a taxable period to be effective for the entire period and in addition for some time previously, as the above cases show. That is to say, retroactivity in taxation which would otherwise be so arbitrary as to be unconstitutional may escape such disability if it is not too great in point of time. But retroactive taxation is not so arbitrary and oppressive as to be unconstitutional if it is no more burdensome than the taxpayer should have expected it to be when he did the thing which created the tax liability. Compare Milliken v. United States, supra. And when it is not, whether the period of retroactivity is comparatively long or short is of little consequence provided it isn't too long to be within reason. Section 213 (f) (1) of the Revenue Act of 1939 was in terms made applicable to exchanges "occurring in a taxable year ending after December 31, 1923, and beginning before January 1, 1939." Its possible backward effect is, indeed, long and in this instance was about seven years. There is no reason, nevertheless, to believe that the petitioner made the exchange in 1932 in the belief that its assumption of the mortgage indebtedness kept the exchange from being a tax free one. On the contrary it is but a fair deduction from the undisputed facts that the petitioner believed the exchange was, when it occurred, the tax free one that the 1939 enactment made it. As the Board justifiably said in its opinion, 43 B.T.A. 557, 562, "When the petitioner acquired the property in 1932 neither it nor its controlling stockholder regarded the assumption of indebtedness as giving rise to gain or loss or as affecting the basis. By the enactment of section 213 in the 1939 Act Congress has, in effect, merely validated the method used by the parties to the 1932 exchange in reporting the effect of that transaction, * * *." Obviously, the petitioner has done nothing it would not have done had the law been, when the exchange was made, exactly what the 1939 enactment later made it. It has, therefore, not been the victim of any injustice and until it can show that it has been hurt it may not challenge the constitutionality of the statute. Stockholders v. Sterling, 300 U.S. 175, 184, 57 S.Ct. 386, 81 L.Ed. 586; Heald v. District of Columbia, 259 U.S. 114, 123, 42 S.Ct. 434, 66 L.Ed. 852; Lee v. State of New Jersey, 207 U.S. 67, 70, 28 S.Ct. 22, 52 L.Ed. 106; People of State of New York ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 51 L.Ed. 415, 9 Ann.Cas. 736; Kuhner v. Irving Trust Co., 2 Cir., 85 F.2d 35, 38, affirmed 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340.

Affirmed.