CHARLES R. MATHIS, JR., AND KATHERINE S. MATHIS, PETITIONERS; *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31549. Promulgated March 25, 1953.

*John W. Donahoo, Esq.*, for the petitioners.
*Ralph V. Bradbury, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* The basic question to be decided is whether there was a reorganization in 1928 under the provisions of section 112 (i) (1) (B) or (D) of the Revenue Act of 1928,[1] resulting in a nontaxable gain under the provisions of section 112 (b) (3) or (4) of the Revenue Act of 1928.[2] If the dissolution of the Company and the formation

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.
   (i) **Definition of reorganization.**—As used in this section and sections 113 and 115—
      (1) The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or * * * (D) a mere change in identity, form, or place of organization, however effected.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.
   (b) Exchanges solely in kind.—
      (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
      (4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

of the Corporation constituted a tax-free reorganization under the above cited sections, the earned surplus of the Company would constitute earned surplus of the Corporation. In such case, there would have been sufficient accumulated net earnings and profits available in 1945 so that the entire distribution to petitioner would be taxable as a dividend. However, if the dissolution and subsequent incorporation did not result in a tax-free reorganization under the provisions set forth above, the earned surplus of the Company would constitute paid-in or donated surplus and the Corporation would not have had sufficient accumulated net earnings and profits as of the end of 1945 for the entire distribution to be taxable as a dividend.

Whether or not the transactions occurring in 1927 and 1928 resulted in a tax-free reorganization depends upon whether the dissolution of the Company and subsequent formation of the Corporation are to be regarded as two separate and entirely unrelated transactions or as preconceived steps in one integrated over-all plan. Petitioner contends that it is the former, and respondent contends it is the latter.

This Court has held that it is unnecessary for the plan to be written and incorporated into the minutes of a corporation if, in fact, the evidence clearly shows that the transaction was a result of a preconceived plan. *Hortense A. Menefee*, 46 B. T. A. 865 (1942); *Wilgard Realty Co.*, 43 B. T. A. 557 (1941), affd. 127 F. 2d 514 (C. A. 2, 1942), certiorari denied 317 U. S. 655 (1942). In the instant case, however, the evidence establishes that the two transactions were not steps in one over-all preconceived plan. The Company was dissolved in 1927 for one purpose only, and that was to do away with an Alabama corporation and resultant Alabama taxes, when most of the operations were in Florida. The assets were distributed to the directors of the Company as trustees.

Section 7069 (3516) of the Code of Alabama of 1923 provides that corporations which are dissolved:

* * * exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their business; and the directors shall be trustees thereof with full power to settle their affairs, collect their debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts; and may act under the by-laws of the corporation, prescribe the terms and conditions of the sales of the property of the corporation, sue for and recover the debts and property of the dissolved corporation, in the corporate name; and are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands. * * *

While it is true that the assets of the Company were not distributed to Sherman by the trustees, they were held for his beneficial interest and, for all practical purposes, were his. Sherman testified that he

considered such assets to be his own. The trustees acted entirely at his direction and the assets were under his control. The Corporation was not formed until May 1928, which was nine months after the dissolution of the Company. The purpose of its formation was so that Sherman could distribute interests in the property to members of his family. Assets held by the trustees were transferred to the Corporation, but, in addition, assets which had not been in the Company were also transferred to the Corporation.

Respondent relies upon the answer to the question appearing in the Corporation's tax return for 1928, in which the answer "Yes" appears to the question, "Was the corporation in any way an outgrowth, result, continuation or reorganization of a business or businesses in existence during this or any prior year since December 31, 1917?" The return is not controlling where the evidence strongly indicates that the dissolution of the Company and formation of the Corporation were two separate and independent transactions. *Cf. Calvin Zimmerman*, 31 B. T. A. 754 (1934).

*Morley Cypress Trust, Schedule "B,"* 3 T. C. 84 (1944), is cited by respondent as controlling this case. In the *Morley* case, the petitioners were the equal shareholders of a West Virginia timber corporation which, having completed its operations in 1926, resolved to discontinue and surrender its franchises. The Secretary of State of West Virginia declared its "dissolution to be authorized" in that same year. Through its liquidating directors, liquidating distributions were made in 1935, 1937, and 1938 of all assets except 16,000 acres of unmarketable land. In 1938, oil was discovered on this land and a new corporation was organized. Its shares were issued to the taxpayers in a ratio of 25 shares for 1, and the assets of the timber corporation were transferred to it. The shareholders surrendered their shares in the prior corporation to it for cancellation. We held that the timber corporation continued to be in the process of liquidation in 1938, although the situation had changed by the discovery of oil and a different method of disposing of its property was devised. We said:

It was, nevertheless, still in process of liquidating all its assets, but, instead of distributing either the assets in kind or the proceeds from their sale directly to its shareholders, a clear method whereby the shareholders would enjoy a realization of gain upon which they would incur liability for tax, it devised a reorganization, by which the shareholders merely changed the form of their evidence of interest in the same property as the Morley corporation had held. The fact that the exchange by the shareholders of their old shares for new was an incident of the liquidation of the old corporation did not deprive the exchange of the character of a reorganization exchange, which in truth it was. We know of no rule of law which requires that a reorganization, otherwise within any of the definitions of section 112 (g) (1), is not to be so regarded because it occurs in the progress of a liquidation. *Love* v. *Commissioner*, 113 Fed. (2d) 236; cf. *Anna V. Gilmore*, 44 B. T. A. 881.

As we said in that case, the fact that a corporation is in the process of liquidation will not deprive an exchange of its classification as a statutory reorganization, if in truth that is what it is. Here, the Company had been dissolved and, looking through form to substance, its assets had been distributed to Sherman, its principal stockholder, and we have found that Sherman had received its assets and exercised complete control over them. In our opinion, therefore, the *Morley* case is not controlling here.

Considering all the facts in the record, we hold that the dissolution of the Company and the subsequent formation of the Corporation were separate and independent transactions, and not part of one overall plan conceived prior to the de facto distribution of all the Corporation's assets. As a result, the earned surplus of the Company became paid-in surplus of the Corporation, and did not constitute a part of the net earnings and profits available for the distribution of a dividend in 1945. The total net earnings and profits of the Corporation, available for the distribution of a dividend as of December 31, 1945, were $43,228.09. The Corporation's total distribution was $86,966.17. Therefore, 49.71 per cent of the $9,600, received from the Corporation during 1945, is taxable to petitioner as a dividend.

Reviewed by the Court.

*Decision will be entered under Rule 50.*