EDISON et al. v. ALSEN'S AMERICAN PORTLAND CEMENT WORKS.

(District Court, S. D. New York. May 7, 1913.)

PATENTS (§ 328*)—INVENTION—APPARATUS FOR MAKING PORTLAND CEMENT.

    The Edison patent No. 802,631 for an apparatus for burning Portland cement clinker is void for lack of patentable invention, being merely for a longer kiln than those in common use when it was applied for.

In Equity. Suit by Thomas A. Edison and another against the Alsen's American Portland Cement Works. On final hearing. Decree for defendant.

Louis Hicks, of New York City, for complainants.

Gifford & Bull, of New York City (Thomas F. Sheridan, of Chicago, Ill., J. Edgar Bull, of New York City, and Carl A. Richmond, of Chicago, Ill., of counsel), for defendant.

HOLT, District Judge. This suit was brought to restrain the alleged infringement of a patent, No. 802,631, issued to Thomas A, Edison for an apparatus for burning Portland cement clinker. The patent states that:

"At the present time Portland or hydraulic cement is produced by burning a mixture of cement rock and limestone in long rotary kilns lined with firebrick and maintained at a slight angle, the heat obtained being produced by the combustion of pulverized coal, and a stack being connected at the upper end to permit of the escape of products of combustion and chemical decomposition."

The claims of the patent sued on are claims 1, 2, 5, 6, 7, 8, and 11. Claim 1 is as follows:

"A cement-burning apparatus for dry material, comprising a tubular kiln, upward of 100 feet in length, means for rotating the same, means for creating a combustion zone within the kiln near its lower end, and means for introducing cement material into the kiln at its upper end, substantially as set forth."

There is obviously nothing new in this claim except the claim that the kiln should be upwards of 100 feet in length. The second claim is similar except that it claims a kiln the length of which is more than 12 times the internal diameter thereof. The fifth claim is for a kiln the length of which is approximately 25 times its internal diameter. The sixth claim is for a kiln the length of which beyond the combustion zone is sufficient to permit substantially all carbon dioxide to be evolved from the cement material before reaching the combustion zone. The seventh claim is for a kiln upwards of 100 feet in length, with a damper in a stack. The eighth claim is for a kiln upwards of 100 feet in length, with means for creating within the kiln near its lower end a combustion zone extending longitudinally of the kiln upwards of 30 feet. The eleventh claim is for a kiln upwards of 100 feet in length, made of sections supported on rollers. All of these claims amount substantially to a claim for a rotary kiln, used in burning cement, more than 100 feet in length. The usual length of the kiln in common use at the time this patent was applied for was about 60 feet, although some had been constructed longer, and the evidence tends to show that one was constructed by the Sandusky Company at Syracuse 110 feet in length, which was in operation as early as August, 1901. The essential claim in the patent, however, is to make a kiln substantially similar to those already in use which should be very much longer and with a little larger diameter. The proof shows that such a large kiln turns out a much larger product, and that, although the amount of coal used in the blast at the lower end of a large kiln is larger than

in a 60-foot kiln, the proportion of the amount of coal burned to the product of cement is much smaller than in the 60-foot kiln, making the use of these long kilns commercially profitable.

There has been a great and rapid development in recent years in the use of Portland cement. Originally such cement was made in small quantities in stationary kilns. Rotary kilns had long been used for roasting ore. When the rotary kilns were introduced for making cement, they were at first comparatively short, being about 15 feet in length; then they were increased to 30 and 40 feet; and at the time this patent was applied for they were usually about 60 feet in length. The tendency, obviously, with the growth of the business, was to continue increasing the length, but the increase had been made by gradual steps. Mr. Edison undoubtedly, in this patent, made a very large increase at one step. It was undoubtedly an expensive and hazardous experiment. There was some doubt felt whether so long a kiln could be successfully operated, and at first it was found to be difficult to do so. But the difficulties were overcome, and since the introduction of the Edison long kiln they have been largely introduced into practice, and now kilns are made of great length, some as long as 240 feet.

Obviously, as a general proposition, there is nothing patentable in making a machine or apparatus larger or smaller, if it produces the same result in the same manner. The fact that it produces a larger output is simply the natural result of using a larger apparatus. Undoubtedly, however, if, by changing the size of the apparatus, a different result is obtained by an essentially different process, such process is patentable. In the original application in this case, the first five claims were for a process, and the subsequent claims for the apparatus. The Patent Office at the outset required a division between the claims for the process and the apparatus, and thereupon the applicant canceled the claims for the process, stating that "an application for the method carried out in this case will be filed before the patent on the present application issued." It does not appear whether such application for a process patent has been filed, but the present patent is exclusively a patent for an apparatus. The complainants claim that the great increase in the length of the kiln resulted in a change in the method or process by which the cement material was calcined. It seems to me questionable whether, if such a change of method occurred, it was protected by a patent for the larger apparatus. It would seem necessary to patent the new process. Assuming, however, that a patent for an apparatus which is simply larger than a previous apparatus used for the same purpose is valid, provided it be shown that it causes a method of action which is essentially different from that of the smaller apparatus, the question arises in this case whether that claim is correct. In the operation of all these rotary kilns, the material, consisting of a pulverized mixture of limestone and clay, is introduced in the upper end of the kiln and by the revolution of the kiln is worked down the interior of the kiln a certain distance until it reaches the region in the lower portion of the kiln where the combustion of the blast of powdered coal is proceeding. While the material is coming down from the upper part of the kiln, through what

is called the calcining zone, until it reaches what is called the combustion zone, it is subjected to intense heat, and carbon dioxide, or, what was formerly sometimes called, carbonic acid, is thrown off and carried up the stack by the draft. After this process has proceeded to a certain point, and the carbon dioxide is substantially eliminated, the matter in the stack becomes calcined and turns into a black and vitreous mass, which is later ground up and makes the cement. The complainants claim that, in the operation of the short kilns of 60 feet or less, the length of the calcining zone was so short that the calcining process was not thoroughly completed and the carbon dioxide not completely eliminated, but that a portion of that elimination took place in the combustion zone, and that such carbon dioxide thrown out had a tendency to smother the fire and in that way to prevent efficient combustion. It is claimed that in Edison's long kiln, from 100 to 150 feet in length, the long distance from the upper end of the kiln down to the point of the combustion zone enabled the matter in the calcining zone to be subjected to a longer and more thorough amount of heat, with the result of a complete elimination of the carbon dioxide before the matter under treatment reached the combustion zone. In other words, it was claimed that in the shorter kiln the calcination process and the combustion process overlapped, while in the long kiln they did not. The evidence satisfies me that in kilns of all sizes whether the action in the calcining zone overlaps the action in the combustion zone depends very largely upon the operation of the kiln. The operator can introduce at will a longer or shorter blast; he can revolve the kiln more slowly or more rapidly; he can feed into the kiln a larger or smaller amount of cement material; and it depends largely upon the manner in which the kiln is operated whether the calcining process is substantially completed before the material is subjected to the heat in the combustion zone, and the best results obtained generally.

The application for the patent in suit as originally made was repeatedly rejected in the Patent Office, but after a complete restatement of the specification, and an almost complete restatement of the claims, the patent was ultimately granted, apparently upon proof furnished by curve sheets, known as the Dinan drawings, which apparently showed that in the 150-foot kiln the carbon dioxide was almost completely eliminated before reaching the combustion zone, while in the 60-foot kiln a considerable portion of the elimination took place after it reached the combustion zone. But curve sheets put in evidence (complainants' Exhibits 7 and 8), showing the experiments made by Prof. Kiefer, apparently show that in those experiments a much larger proportion of the total carbon dioxide is driven off in the combustion zone of the long kiln than in the combustion zone of the short kiln. I think it would naturally be expected that in the long kiln a more perfect elimination of the carbon dioxide would take place before the material reached the combustion zone than in the short kiln. But the proof on the subject leaves the matter certainly in doubt, and in my opinion the fact is immaterial. The proof shows that the quality of the cement produced in the short kiln and in the long kiln is equally good, and that the process to which the material is subjected is sub-

stantially the same. There are some other claims suggested of essential differences in the process, such as the greater liability of clinker rings to form in the small kilns, choking the draft, the capacity of the long kilns for a larger load, and the greater utilization of the heat in the long kiln before passing up the stack; but in my opinion these are all simply advantages resulting from the larger size of the apparatus. Upon the whole, my conclusion is that there is nothing essentially novel in this alleged invention. It is in fact simply a claim for a patent for a larger kiln than was in common use when the patent was taken out. If this patent can be sustained, the man who first made a 60-foot kiln could have taken out a similar patent which would be infringed by the use of any longer kiln. The first claim is for a kiln 100 feet long. A kiln 99 feet long does not infringe, but a kiln 101 feet does infringe, if this claim is valid. .

In my opinion, the patent is invalid as not disclosing any invention that is patentable, and the bill should be dismissed, with costs.