## FLORIDA MACHINE & FOUNDRY CO. v. FAHS, Collector of Internal Revenue.
### Civil Action No. 1148 J.

District Court, S. D. Florida,
Jacksonville Division.
July 17, 1947.

John Donahoo and W. T. Rogers, both of Jacksonville, Fla., for plaintiff.

Herbert S. Phillips, U. S. Dist. Atty., of Tampa, Fla., and John W. Fisher, Sp. Asst. to Atty. Gen., for defendant.

STRUM, District Judge.

The plaintiff-taxpayer sues to recover additional assessments levied against it by the Commissioner for the years 1941 and 1942, aggregating with interest $19,089.44, which were paid under protest. The determinative question is whether or not, for the purpose of determining gain or loss from a sale of land in 1941, under sec. 113 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 113, and also for determining the taxpayer's equity invested capital under sec. 718 for the years 1941 and 1942, the proper basis of value for this land is its fair market value when acquired by the taxpayer corporation at its organization on July 16, 1924, or its value in the hands of the corporation's transferor, Franklin G. Russell, Senior, when the latter acquired it individually in 1912. This in turn involves the question of whether or not the transferor of said assets was "in control" of the taxpayer corporation immediately after the transfer within the meaning of secs. 112(b) (5) and 112(h) of the I.R.C. 26 U.S.C.A. Int.Rev.Code, § 112(b) (5), (h).

For some years prior to 1912, Mr. Franklin G. Russell, Senior, as sole proprietor, operated Florida Machine Works on Riverside Avenue in Jacksonville, Florida, engaged in making machine castings and doing general foundry and machine work. On May 31, 1912, he purchased for $25,000 a tract of land on West Church Street in Jacksonville, containing 320,166 square feet, to which location the plant was moved some years later.

Mr. Russell, Senior, was a competent and experienced practical operator in the found-

ry and machine shop business, but had little technical education. He needed a technical man to aid in the operation and expansion of the business. He had a son, Franklin G. Russell, Junior, who in 1924 was 31 years of age. The son had graduated from college, where he specialized in mechanical engineering, and served two years as a soldier in World War 1. After the son's graduation from college in 1916, he served as an apprentice in the several departments of the business, learning the practical end of the business, after which he went into the office as assistant manager. Beginning about the year 1920, the father and son had from time to time discussed plans for the son to come into the business as a one-half owner thereof, and ultimately to succeed his father as general manager. When the location of the business was changed from Riverside Avenue to West Church Street, the son, Franklin G. Russell, Junior, planned and laid out the new plant installation. He continued as assistant manager until he took over the complete management of the business when his father retired. About 1921, the father and son reached an agreement that the son was to have a one-half interest in the business, in consideration of the son's staying with the business and operating it.

In order to carry out this agreement, a corporation was organized on July 16, 1924, under the name of Florida Machine & Foundry Company. The incorporators were Franklin G. Russell, Senior, Franklin G. Russell, Junior, and an employee, O. M. Smith. At the organization meeting on July 16, 1924, Mr. Russell, Senior, conveyed to the corporation all the assets of the business then individually owned by Mr. Russell, Senior, including the tract of land here involved, for stock in the corporation to be issued *directly* to the following persons:

| | |
|---|---|
| Franklin G. Russell, Senior, | 1181 shares, |
| Franklin G. Russell, Junior, | 1176 shares, |
| Louise C. Russell, | 1 share, |
| Hilda R. McCrory, | 1 share, |
| O. M. Smith, | 1 share. |

In 1941 the taxpayer corporation, plaintiff herein, sold an unneeded portion of the land on West Church Street, containing 75,-226 square feet, for $15,000. The March 1, 1913, value of said portion was 10¢ per square foot, or $7,522.60. On July 16, 1924, the fair market value of the portion sold was 17.5¢ per square foot, or $13,164.55.

In its 1941 income tax return, the taxpayer claimed a loss on this sale in the sum of $11,270, using as a basis of value of the land sold, the amount of $26,270, which was a proportionate part of the value of $100,000 claimed by the taxpayer for the entire tract of 320,000 square feet, as of July 16, 1924, the date of organization of the corporation and acquisition of the land by the taxpayer. On this basis a loss of $11,270 appears in the transaction. The Commissioner, however, asserted that the transfer to the corporation on July 16, 1924, was a non-taxable exchange of property, as defined in sec. 112(b) (5) of the I.R.C., and that for the purpose of computing gain or loss under sec. 113(a) (8), I.R.C., the proper basis of value was the March 1, 1913, value in the hands of the transferor, Franklin G. Russell, Senior, which was 10¢ per square foot, plus an additional amount for taxes capitalized, aggregating $7,824.53, so that instead of a loss of $11,270, as claimed by the taxpayer, there was a taxable gain of $7,175.47. The Commissioner also contends that the same basis should be observed in computing the taxpayer's equity invested capital under sec. 718 of the I.R.C. for the years 1941 and 1942.

The Court finds that Franklin Russell, Senior, owned less than 80% of the capital stock of plaintiff corporation immediately after the transfer of the real estate and other assets to it on July 16, 1924, and therefore did not have "control" of plaintiff corporation "immediately after the transfer," as defined in sec. 112(h), I.R.C., and in sec. 112(b) (5) of the Treasury Regulations. It follows that the transfer on July 16, 1924, from Mr. Russell to plaintiff corporation, was a taxable transaction, since it was not within the exclusion of sec. 112 (b) (5), I.R.C., which provides that no gain or loss shall be recognized if property is transferred to a corporation by a person who is "in control" of the corporation immediately after the transfer—that is, one who owns at least 80% of all voting stock and other classes of stock.

Obviously, Mr. Russell, Senior, owned far less than 80% of taxpayer's capital stock according to the stock register. There is no basis in the evidence to find that the issue of stock on July 16, 1924, and the interests in the corporation thereby represented, were other than bona fide· There is no evidence of subterfuge or evasion—no evidence that Mr. Russell sought to conceal a personal control of the corporation by formally placing one-half of the capital stock in his son's name. To the contrary, it appears that the entire transaction was regular and in good faith, for the declared purpose of bringing his son into the business as a one-half owner, so that the son could and would carry on this long-standing family business after the retirement of his father, who was then getting along in years. At the time of this transaction, the son was a mature and experienced man, 31 years old, fully competent by education and experience to take over and manage the responsibilities of the business, which he did. The uncontradicted evidence is that the son was the absolute owner of the stock issued to him; that he exercised all the privileges of ownership thereof, and paid income tax on the dividends therefrom.

■ In his income tax return for 1924, Mr. Russell, Senior, reported no taxable gain to himself arising from the July 16, 1924, transfer of assets to the corporation. But this omission on Mr. Russell's part can not be visited upon, nor does it estop, the present taxpayer. Moreover, in 1924 the public was not as tax conscious as today,— which may account for an omission of this character, involving no cash gain.

The question here presented is ruled by the decision of the Second Circuit in Heberlein v. United States, 105 F.2d 965, rather than by the decision of the same circuit on a different state of facts, in Wilgard v. Commissioner, 127 F.2d 514. In the latter case, it is pointed out that the stock issued to Chamberlain's (the transferor's) relatives was a pure gift which the donor could make or withhold at pleasure. He·was under no obligation to have the corporate stock issued to his relatives. He had the power and lawful right to withhold the stock from the donees, which would "include the use of it

to control the petitioner (the taxpayer corporation) for as long as he (Chamberlain) desired." In that case the stock was issued originally to Chamberlain, and then transferred by him to his relatives. See 127 F.2d at top of page 516. This was regarded as a vital factor in placing him in control of the taxpayer corporation.

■ Here, on the contrary, as also in the Heberlein case, the stock was not issued to the corporation's transferor and then conveyed by the latter to someone else. In this case the father's stock was issued directly to the father, and the son's stock directly to the son. The father was never the owner or holder of the latter stock, so that he could control or otherwise use it in the affairs of the corporation. The only offer Mr. Russell, Senior, ever made to the corporation was to convey certain assets for which the corporation would issue 1181 shares to Mr. Russell, Senior, and 1176 shares *directly* to the son. The corporation had no authority or alternative, upon acceptance of the conveyance from Mr. Russell,· Senior, but to issue this 1176 shares directly to the son, as stated in the proposal of Mr. Russell, Senior. All this was pursuant to, and in performance of, an express agreement between the Russells, father and son, that the latter should have a one-half interest in the business in consideration of past services and in further consideration of the son remaining with the business as manager, to carry it on after his father's retirement—which further distinguishes this case from the Wilgard case. See also Bassick v. Commissioner, 2 Cir., 85 F.2d 8; and Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513.

The Court holds that the proper basis of the land in question, for tax purposes, is its fair market value when acquired by plaintiff taxpayer, July 16, 1924, which is $67,000 and the cost basis of the property sold in 1941 is 17.5¢ per square foot, or, $13,164.55. Plaintiff is entitled to recover, with interest, all sums exacted as a result of using a lesser basis of value or cost in computing the taxes in question. What this sum is, the parties may compute, and a judgment therefor may be presented fᴏʳ settlement on notice.