Cleveland Chiropractic College, a corporation, 3724 Troost Ave., Kansas City, Mo. v. Commissioner. Dr. Carl S. Cleveland, Sr., 3511 West Olympic Boulevard, Los Angeles, California v. Commissioner.
Cleveland Chiropractic College v. Commissioner
Docket Nos. 80745, 80746.
United States Tax Court
T.C. Memo 1962-1; 1962 Tax Ct. Memo LEXIS 306; 21 T.C.M. (CCH) 1; T.C.M. (RIA) 62001; January 3, 1962
V. E. Phillips, Esq., Home Savings Bldg., Kansas City, Mo., for the petitioners. Merrill R. Talpers, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in and additions to petitioners' income tax for the years and in the amounts as follows: Cleveland Chiropractic College -
Docket No. 80745
Additions to Tax
Year
Deficiency
Sec. 291(a)
Sec. 293(a)
1948
$3,072.24
$ 768.06
$153.61
1949
4,806.41
1,201.61
240.32
1950
3,040.75
760.19
152.04
1951
2,996.85
999.14
199.83
*307 Carl S. Cleveland, Sr. - Docket No. 80746
Additions to Tax
Sec.
Sec. 294
Sec.
Year
Deficiency
291(a)
(d)(1)(A)
294(d)(2)
1947
$ 8,083.12
$ 799.44
$532.96
1948
1,833.90
246.98
164.65
1949
840.87
90.29
60.19
1950
946.76
$94,68
104.06
69.37
1951
11,959.51
1,087.20
724.79
The issues for decision are: 1. Whether Carl S. Cleveland, Sr., omitted gross receipts in the amount of $19,006.41 from his 1947 Federal income tax return; 2. Whether Carl S. Cleveland, Sr., received additional income or constructive dividends in the amount of $28,140.62 from Cleveland Chiropractic College in 1951; 3. Whether respondent erred in his determinations regarding certain items of income and expense and additions to tax for the years 1947 through 1951; 4. Whether Cleveland Chiropractic College qualified for tax exemption during the years 1948 through 1951 under section 101(6) of the 1939 Code; and 5. Whether Cleveland Chiropractic College is liable for additions to tax under sections 291(a) and 293(a) of the 1939 Code. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. The petitioner *308 in Docket No. 80745, Cleveland Chiropractic College, was originally incorporated as Central College of Chiropractic, a Missouri nonprofit corporation, on December 22, 1922. On May 23, 1924, the name was changed to Cleveland School of Chiropractic. Subsequently, in 1952, the name was again changed to Cleveland Chiropractic College (hereinafter referred to as the College). Carl S. Cleveland, Sr. (hereinafter referred to as Carl), the petitioner in Docket No. 80746, is an individual. Carl filed his Federal income tax returns for the calendar years 1947 through 1951 with the district director of internal revenue, Kansas City, Missouri. For the calendar year 1950, his return was filed on April 16, 1951. When it was organized in 1922, the College had three trustees, Carl, his wife, and his brother-in-law. In 1940, Carl's wife and brother-in-law were replaced by his son, Carl S. Cleveland, Jr., (hereinafter referred to as Carl, Jr.) and Fanny Sue Nelson (hereinafter referred to as Fanny). At various times, the trustees had meetings to discuss the operation of the College. Until 1947, the College always leased rather than owned the real property used in its business. In that year the *309 College acquired its first piece of real property which was located at 3664-68 Troost Street, Kansas City, Missouri. The College made a down payment of approximately $19,000 on the property. From 1929 through the present time, the College used, as its main office, a building located at 3724 Troost Street. In December 1950, Carl conveyed this property and a piece located at 3726 Troost Street to the College. The College was to pay $55,000 for the two pieces of property which had cost Carl $12,500 and $2,000 in the years 1929 and 1945, respectively. A down payment of $2,000 was made and the balance of the purchase price was secured by a promissory note and a deed of trust. The note called for installments of $5,000 annually, no one of which as yet has been paid. The reason for the sale was to comply with the wishes of the National Chiropractic Association. The College was organized for the purpose of erecting, establishing and maintaining an institution of learning for the education and instruction of students in the art, science and philosophy of chiropractic. The College employed teachers, held classes, and issued diplomas to graduates. On January 25, 1944, the College opened a *310 bank account in its name at the Linwood State Bank in Kansas City, Missouri. In his individual income tax returns for the years 1942 through 1947, Carl reported not only his own personal income and expenses, but those of the College as well. Carl's attorney prepared his 1947 return from audit information furnished by an accountant. The audit information showed the College had gross receipts of $56,944.41. For some unexplained reason, the accountant reduced this by the down payment on the property located at 3664-68 Troost Street; and the balance, or $37,938, was reported in Carl's return as his gross income. On June 12, 1948, Carl wrote a letter to the acting collector of internal revenue, Kansas City, Missouri, requesting a certificate exempting the College from Federal income tax. Enclosed with the letter was a Form 990 (entitled Annual Return of Organization Exempt from Income Tax under Section 101 of the Internal Revenue Code) and a Form 1023 (entitled Exemption Affidavit). In reply to a request by the respondent for further information regarding the exempt status of the College, Carl wrote a letter dated November 17, 1948, and enclosed a statement of *311 receipts and disbursements for the College for the period March 1, 1947, to February 28, 1948, and a balance sheet for the College as of February 28, 1948. In a letter dated February 16, 1949, the Treasury Department ruled that the College was exempt from the payment of Federal income tax and filing reports as to exempt corporations. After the name of the College had been changed to Cleveland Chiropractic College, its charter was amended by decree of the Circuit Court of Jackson County, Missouri, dated April 17, 1952. On March 24, 1955, the district director of internal revenue, Kansas City, Missouri, was notified the College had changed its name and amended its charter. This notification was subsequent to a letter dated March 16, 1955, from the district director relating to the College's exemption from Federal income tax. By a ruling dated November 8, 1956, respondent retroactively revoked the exempt status of the College. On April 3, 1959, respondent sent the College a notice of deficiency. The respondent determined that the College had net operating profits and losses for the following years: Year
Profit or (Loss)
1948
$13,792.37
1949
21,225.63
1950
13,220.66
1951
13,901.08
1952
(3,477.26)
*312 Prior to 1949, the College maintained no balanced set of books. The only records maintained as to expenditures were cancelled checks and some invoices paid in cash. In 1949, a double entry set of books and a distribution journal were initiated. The receipts of the College, both cash and check, during the years in issue, were almost always turned over to Carl. Upon receiving these receipts, he would initial the receipt or other record maintained by the College, which indicated he had received the money. During the years in issue, Carl paid personal expenses out of the undeposited College receipts. He also paid some personal expenses by checks drawn on the College bank account, with an appropriate charge being made to his drawing account on the books of the College. On September 1, 1950, the trustees of the College passed a resolution, which stated that Carl was designated as nominee for the College to conduct negotiations, enter into contracts, and make the purchase of the Ratledge System of Chiropractic Schools (hereinafter referred to as the Ratledge School) in Los Angeles, California. A sales agreement between T. F. Ratledge, Blanch M. Ratledge, and J. E. Ratledge, as sellers, *313 and Carl, as buyer, was entered into on October 10, 1950. The Ratledge School has never been and is not now an organization exempt from Federal income tax. As of the date of this proceeding, the College has not acquired title to the stock and physical properties of the Ratledge School in its own name. Opinion On brief, respondent made certain concessions which will be given effect in a Rule 50 computation. Issue 1. The issue for decision is whether Carl omitted gross receipts from his 1947 income tax return. Carl's 1947 income tax return was made out by his attorney, based on audit information furnished by an accountant. This information showed that the College had gross receipts of $56,944.41. For some unexplained reason, the accountant reduced this amount by $19,006.41 (amount paid in connection with the purchase of property located at 3664-68 Troost Street), and the difference, $37,938, was reported as gross income on his personal return. In the notice of deficiency, respondent increased Carl's taxable income by the amount of the omitted gross receipts or $19,006.41. It is Carl's contention that respondent's action was erroneous because it was based on his failure to *314 include, in his personal income, the total income of the College. He contends that the person preparing his personal return for 1947 erroneously included the income of the College, which was a corporation, and, if he now has to include the omitted gross receipts, it would perpetuate the error. It is respondent's contenton that Carl operated the College as a sole proprietorship; therefore, the omitted gross receipts were properly includible in Carl's gross income. To support his position, respondent points out that for the years 1942 through 1947, Carl reported the income and expenses of the College in his personal return. There was testimony by one of respondent's agents that Carl reported the income of the College as a sole proprietorship. In addition, one of respondent's agents testified that one of the returns in the 1942 to 1946 period contained the notation, "Dr. Cleveland, doing business as Cleveland Chiropractic College." He also testified that on several of those returns Carl's occupation was listed as "school operator" and where there was a reference to an employer, it was stated as "self." We agree with the petitioner. Respondent has not contended otherwise and there *315 seems to be little doubt that the omitted income was earned by the College. In order to sustain respondent's determination, it would be necessary to disregard the corporate identity of the College. Apparently realizing this to be the case, respondent has contended that the College was operated as a sole proprietorship. This position is supported by little more than some bookkeeping entries and conclusions of respondent's own agents. Bookkeeping entries, even of the taxpayer himself, though of some evidentiary value, are not conclusive and decision must rest on the actual facts. Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918). Where a close relationship results in an improper allocation of income or expenses, the respondent's remedy is by way of reallocation. Any such improper allocation is not, however, conclusive as to the issue of separate identity. See Campbell County State Bank, 37 T.C. - (December 11, 1961). The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or comply with the demands of creditors or to serve the creator's personal or undisclosed *316 convenience, so long as that purpose is the equivalent of a business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. Moline Properties v. Commissioner, 319 U.S. 436 (1943). The corporate form may be disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction. Higgins v. Smith, 308 U.S. 473 (1940); Gregory v. Helvering, 293 U.S. 465 (1935). In the case before us, the College was formed for a business purpose and carried on that business in its own name. The corporate form was not a sham or unreal. The College employed teachers, conducted classes, issued diplomas in its name, had a bank account, had directors' meetings and purchased property. On the record before us, we see no basis for disregarding the corporate identity of the College. Accordingly, we hold that respondent erred in his determination. Issue 2 For the year 1951, respondent increased Carl's taxable income by $28,140.62. It was determined that his withdrawals from the College amounted to $28,963.95 rather than $823.33 reported on his return. The minutes *317 of the board of trustees of the College, dated September 1, 1950, indicate that Carl was designated to act as nominee for the College in acquiring the Ratledge School. On October 10, 1950, the owners of the Ratledge School and Carl entered into and consummated a sales agreement for the purchase of the Ratledge School. Carl contends that the additional withdrawals, which respondent seeks to include in his income, were trust funds which he used to purchase the Ratledge School. Under these circumstances, Carl contends that respondent erred in increasing his taxable income by $28,140.62. In his reply brief, respondent states that the deficiency resulted from the inclusion, in Carl's income, of all amounts credited to his drawing account as a result of the Ratledge School acquisition. It is respondent's position that Carl acquired the Ratledge School for himself rather than as an intermediary for the College. Respondent points out that the sales contract refers to Carl individually with no reference to him as a fiduciary. Furthermore, respondent points out that the title to the Ratledge School is still in Carl's name ten years after it was purchased. We agree with the petitioner. *318 The resolution of the College authorized Carl to purchase the Ratledge School as a nominee. The fact that he took it in his own name is not inconsistent with the fact that he was a nominee. Carl also explained that because of legal involvements with the Ratledge School, title had not been transferred to the College. In addition, the College had an account set up on its books which indicated Carl was a trustee. While it is not free from doubt, we are satisfied that Carl did not purchase the Ratledge School for himself, but purchased it as a nominee for the College. Accordingly, we hold that respondent's determination was in error. Issue 3 For the years 1947 through 1951 respondent disallowed part of the entertainment and travel expense deducted by Carl. These are the only items which Carl has put in issue. Since Carl failed to introduce any evidence regarding additional withdrawals, [1] lab fees and X-ray, [2] depreciation, [3] rental income, [4] and additions to tax, [5] respondent's determinations are sustained. *319 The evidence indicates little, if any, substantiation for the alleged travel and entertainment expenditures. Carl's testimony regarding the expenses amounted to little more than an assertion that his returns were correct as filed, which falls far short of sustaining his burden of proof. Respondent's determination is accordingly sustained. Issue 4 For the years 1948 through 1951, the College contends that it is an educational corporation exempt from tax under section 101(6) of the 1939 Code. [6] A corporation, to be entitled to exemption from tax under section 101(6) must establish that it is both organized and operated exclusively for educational purposes, and no part of the net earnings inures to the benefit of any private shareholder or individual. While the charter of a corporation is conclusive as to the purpose for which it was organized, it does not control the fact as to whether it was operated exclusively for such purposes. Whether it was so operated is to be determined from the facts and circumstances established in each particular case. Cummins-Collins Foundation, 15 T.C. 613 (1950). *320 The provisions of the College charter indicate that it meets the test of "organization" for purposes specified in the statute. Respondent has never seriously contested this. While respondent has argued that the College was not operated exclusively for educational purposes, his main argument centers around the inurement test; that is, part of the net earnings of the College inured to Carl. Respondent contends that since part of the net earnings of the College inured to the benefit of a private individual the College does not qualify for exemption under section 101(6). The College has argued that no part of its net earnings could inure to anyone since 1949 was the only year in which it had a net profit. Respondent determined that the College had net earnings in each year from 1948 through 1951. This determination is presumptively correct. Since the College has failed to adduce any evidence to show this determination was erroneous, its contention must fail. The College also contends that Carl did not withdraw any sums in excess of his salary and valid obligations due him. This the College has failed to prove. On the books of the College, a drawing account was set up for Carl. Into *321 this account went some of the expenditures of the College as well as those for Carl's personal benefit. From the evidence in the record, there is no way to determine what was spent for the College and what was spent for Carl personally. Furthermore, the drawing account, for the most part, included only amounts disbursed by check. It was the practice of the College to turn over all cash receipts to Carl for deposit in the College's bank account. Gilman, the college accountant, testified that at times Carl used part of these cash receipts for personal expenses, and that these sums would not be shown in the drawing account. He also testified, and it seems very evident, that it was sometime in 1952 before there was any effective control over cash. This was a period of time after Carl had gone to Los Angeles to take over the Ratledge School. On the record before us, the College has failed to prove that no part of its net earnings inured to the benefit of any individual during the years 1948 through 1951. Accordingly, we hold that it is not entitled to an exemption from corporate income tax for those years. Issue 5 On June 12, 1948, the College applied for exemption from Federal *322 income taxes under section 101(6). [7] By a letter ruling dated February 16, 1949, the exemption was granted. Subsequently, on November 8, 1956, respondent retroactively revoked this exemption. In his notice of deficiency, respondent determined that the College was liable for additions to tax under sections 291(a) [8] and 293(a) of the 1939 Code. *323 For the years 1948 through 1951, the College did not file Federal income tax returns. If the College had reasonable cause for its failure to file returns, it will not be liable for the additions to tax under section 291(a). In the letter ruling, dated February 16, 1949, granting the College exemption from Federal income tax it was stated that: Accordingly, you will not be required to file income tax returns unless you change the character of your organization, the purposes for which you were organized, or your method of operation. On the basis of this, the College contends it had reasonable cause for its failure to file returns. Respondent contends that the College is not entitled to rely on the foregoing excerpt because it misrepresented material facts in the application for exemption. We agree with the petitioner. If the exemption ruling was obtained through misrepresentations of material facts, the College would not be entitled to rely on it as a basis of reasonable cause. Birmingham Business College, Inc., v. Commissioner, 276 F. 2d 476 (C.A. 5, 1960). The material misrepresentations respondent refers to are the failure of the College to answer one question *324 concerning the rental of property and certain aspects of the financial statement were incorrect. On the basis of the present record, we fail to perceive the materiality of the alleged misrepresentations. We hold there was reasonable cause for the College's failure to file returns. Since the College has introduced no evidence on the issue of additions to tax under section 293(a), respondent's determination will be sustained. Decisions will be entered under Rule 50. Footnotes
1. Additional withdrawals from the College not included in income: ↩
1948
$4,867.41
1949
3,155.88
1950
1,788.58
2. Additional lab fees and X-ray income not reported: ↩
1948
$172.00
1950
528.50
3. Depreciation disallowed: ↩
1948
$488.80
1949
476.43
1950
876.43
4. Additional rental income not reported: ↩
1949
$ 33.75
1950
67.50
1951
67.50
5. Additions to tax, 1939 Code: ↩
Sec. 291(a)
Sec. 294(d)(1)(A)
1947
$ 799.44
1948
246.98
1949
90.29
1950
$94.68
104.06
1951
$1,087.20
6. Sec. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *
(6) Corporations * * * organized and operated exclusively for * * * educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *↩
7. See footnote 6, supra. ↩
8. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1).↩