## SOL DIAMOND AND MURIEL DIAMOND, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3260–65, 2989–66.    Filed June 21, 1971.

---

*Richard Weinberger*, for the petitioners.
*Lewis M. Porter, Jr.*, for the respondent.

534

OPINION

RAUM, *Judge:* 1. *Payments to the Moravecs.*—In 1961 petitioner Sol Diamond, as a mortgage broker, received an aggregate of $145,-186.37 in commissions or fees from various borrowers for obtaining some 24 loans on their behalf from Marshall Savings & Loan Association, which was controlled by members of the Moravec family. He reported that amount as income and claimed various deductions as expenses incurred in the conduct of his mortgage brokerage business. Among those deductions was an item of $39,398.50 described as "Consultants fees." That item represents the sum of payments made by petitioner to the Moravecs in connection with four of the foregoing loans plus a further payment to them that was not identified with any particular loan. The Commissioner disallowed the claimed deduction. He ruled that the "Consultants fees" item was "not deductible under the provisions of section 162 of the Internal Revenue Code of 1954, or any other section thereof." Section 162(a) grants a deduction for "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business."

In their original petition in this Court petitioners' sole allegation of error was that the Commissioner had erroneously determined that the moneys paid by petitioner Sol Diamond "for services of others in assisting him in arranging and expediting loans was not deductible under Section 162 of the Internal Revenue Code as an ordinary and necessary business expense." It was not until the trial of this case that petitioners filed an amendment to their petition, claiming in the alternative that petitioner acted merely as a conduit for the Moravecs in respect of the amounts paid to them and that the aggregate of such amounts [6] should never have been included in gross income in the first instance. While petitioners argue both points on brief, they appear to place their principal emphasis upon their new alternative position. We conclude that they cannot prevail on either theory.

(a) *Exclusion from gross income.*—We note at the outset that petitioners' alternative position is inconsistent not only with their 1961 income tax return, which reported the full $145,186.37 mortgage loan commissions (unreduced by the payments to the Moravecs), but also with the original petition filed in this Court. Thus, in their original petition they painted a picture of services rendered by the Moravecs, of petitioner's having engaged them to assist him in his activities as a mortgage broker, and of the payments made by him to the Moravecs for such services. The theory of the amended petition was entirely

---

[6] The amended petition referred to a figure of $36,657.57. However, the sum of the payments to the Moravecs was $39,398.50, and it was this figure that was probably intended. The $36,657.57 figure is precisely the amount of the deficiency determined for 1961.

different. It treated the Moravecs as being in complete control of the commissions received by petitioner from the borrowers, and proceeded upon the explicit assumption that the Moravecs merely "permitted Petitioner to retain all commissions other than the amounts" which he paid over to them. Thus, it portrayed petitioner "as a conduit for the Moravecs," and sought to have excluded from the commissions actually received by petitioner the amounts which he paid to them as "Consultants fees." While it is of course open to petitioners to present alternative theories, we must nevertheless evaluate the evidence with particular care to the extent that a new theory depends upon facts that may be inconsistent with allegations in the original petition which petitioners had verified as true.

We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit.[7] But, as we evaluate the evidence, petitioner in this case was no mere conduit.

Petitioner testified that he originally had an understanding with Henry Moravec, Jr., that he would pay over to the Moravecs 50 percent of the commissions he received, but that after making a number of such payments, he was released from his obligation as the result of unexpected expenses which he incurred. We found his testimony altogether unconvincing. To be sure, four of petitioner's five payments to the Moravecs were equal or approximately equal to 50 percent of commissions he received at about the same time. But petitioner made no payments that could be identified with the 20 other commissions he received during 1961. Moreover, the chronology of the commissions and payments belies petitioner's account of his original understanding with Henry, Jr.; payments were not made when the first commissions were received in 1961, nor were they made regularly. Furthermore, although Henry Moravec, Jr., did not testify at the trial herein, the parties have stipulated what his testimony would have been if he had been called to testify. As stipulated, his testimony does not support petitioner's account of their understanding and in some respects conflicts with petitioner's testimony. We conclude that petitioners have failed to carry their burden of proof, that the commissions were received by petitioner under a claim of right, and that they must include all commissions received in 1961 in their gross income. Cf.

---

[7] See *Stevens Bros. & Miller-Hutchinson Co.*, 24 T.C. 953, 957; *Horace Mill*, 5 T.C. 691, 694; *Mark D. Eagleton*, 35 B.T.A. 551, 561–563, affirmed on other issues 97 F. 2d 62 (C.A. 8); *Joan A. Nunez*, 28 T.C.M. 1150, P–H. Memo. 69–1246; *Estate of John Kalichuk*, 23 T.C.M. 2089, P–H. Memo. 64–2307. Compare also those cases in which payments or rebates between vendor and vendee have been regarded as merely affecting the determination of the net sales price. *Pittsburgh Milk Co.*, 26 T.C. 707; *Atzingen-Whitehouse Dairy, Inc.*, 36 T.C. 173; cf. *Allen Schiffman*, 47 T.C. 537.

542

*North American Oil Consolidated* v. *Burnet*, 286 U.S. 417, 424; *United Draperies, Inc.* v. *Commissioner*, 340 F. 2d 936, 938 (C.A. 7), affirming 41 T.C. 457, certiorari denied 382 U.S. 813. As we pointed out in *Boyle, Flagg & Seaman, Inc.*, 25 T.C. 43, 48, "If petitioner is to be entitled to a tax benefit with respect to the amounts paid to the [Moravecs] * * *, such benefit must be in the form of a deduction from gross income * * *." [8]

(b) *Ordinary and necessary business expenses.*—We also conclude that petitioners may not deduct the payments made to the Moravecs as ordinary and necessary business expenses. As noted above, the Commissioner's disallowance of the claimed deduction was based generally upon his determination that it failed to comply with the requirements of section 162, which grants a deduction for "ordinary and necessary" business expenses. These provisions have been regarded as excluding those deductions the allowance of which would "frustrate sharply defined national or state policies proscribing particular types of conduct." *Commissioner* v. *Heininger*, 320 U.S. 467, 473; *Tank Truck Rentals, Inc.* v. *Commissioner*, 356 U.S. 30; *Commissioner* v. *Tellier*, 383 U.S. 687, 694; *Dixie Machine Welding & Metal Works, Inc.* v. *United States*, 315 F. 2d 439 (C.A. 5), certiorari denied 373 U.S. 950; *Coed Records, Inc.*, 47 T.C. 422; see also *Boyle, Flagg & Seaman, Inc.*, 25 T.C. 43, 48–51, cited with apparent approval in *Tank Truck Rentals, Inc.*, 356 U.S. at 35. In its opening statement to this Court at the trial, the Government indicated that it was challenging the claimed deduction not only on the grounds that the expenditures were not "ordinary and necessary" to petitioner's business, but also on the further ground that they were in contravention of sharply defined public policy.[9] Petitioners were thus put on notice, if such notice were deemed to be necessary, that their burden of proof related to both aspects of the deductions which they sought to defend. And while it is true that the Government's brief, filed *after* the trial, appears to rely only upon the public policy ground, it is open to this Court to decide this issue upon either ground.[10]

[8] *Lashells' Estate* v. *Commissioner*, 208 F. 2d 430 (C.A. 6), relied upon by petitioners, was distinguished in *Boyle, Flagg & Seaman, Inc.*, 25 T.C. at 48, as well as in *United Draperies, Inc.* by the Seventh Circuit to which appeal in the present case lies. The Sixth Circuit in *Lashells* regarded the taxpayer as a mere conduit on the record in that case. We think that *United Draperies* is controlling here on the facts before us.

[9] Government counsel stated as follows:

"The questions presented to the Court, with respect to the foregoing issue, are, one, whether the expenditures for which petitioners claimed a deduction as consultants fees constitute expenses which are ordinary and necessary within the meaning of Section 162 of the 1954 Code, and/or, two, whether such expenditures are in contravention of sharply defined public policy as expressed in Sections Two and 1006 of Title Eighteen United States Code."

[10] Indeed, the rule is well settled that a deficiency may be approved on grounds other than those relied upon by the Commissioner or even where the grounds advanced by him may be incorrect. See *Wilkes-Barre Carriage Co.*, 39 T.C. 839, and cases cited at 845–846, affirmed 332 F. 2d 421 (C.A. 2).

Accordingly, although we think that there is considerable force to the public policy argument that the allowance of the deduction would contravene a sharply defined policy of the United States,[11] we prefer to rest our decision on the other ground that petitioners have failed to establish that the payments to the Moravecs were "ordinary and necessary" expenses of the mortgage brokerage business.

The payments were designated on petitioners' returns as "Consultants fees," but the record does not contain any satisfying evidence as to the reason why they were made. To be sure, there was testimony that the Moravecs, or one of them, rendered some services to petitioner, but it had a hollow ring. The payments were made secretly and deceptively. With the exception of one person, none of Marshall's officers, directors, or depositors knew of the payments or even of the existence of Real Consultant Associates. Some of the checks were issued to Real Consultant Associates; others were issued to "M. Bonke." No explanation has been offered for this highly unusual procedure. Apart from Henry, Jr.'s stipulated testimony that three other individuals made similar payments to the Moravecs, the record is devoid of proof that such payments were customary or normal in the savings and loan industry. What we said in *Frederick Steel Co.*, 42 T.C. 13, 25, is equally applicable here:

This case is to be sharply distinguished from *Lilly* v. *Commissioner*, 343 U.S. 90 * * * where the Court concluded that the payments were "ordinary." The Court stated, at page 93, that the facts were "not in dispute" and that under the "long-established practice in the optical industry in the localities where petitioner did business, [the payments] * * * were normal, usual and customary in size and character. The transactions from which they arose were of common or frequent occurrence in the type of business involved. They reflected a nationwide practice."[5] We cannot make any such a finding in this case. The payments herein were not deductible. Cf. *United Draperies, Inc.*, 41 T.C. 457. [Footnote omitted.]

The burden of proof is upon petitioners and in our judgment they have failed to prove the payments in issue to be "ordinary" within the meaning of section 162. The deduction is therefore disallowed. See *United Draperies, Inc.* v. *Commissioner*, 340 F. 2d 936, 938 (C.A. 7), affirming 41 T.C. 457, 463, certiorari denied 382 U.S. 813.

2. *201–207 W. Monroe Street property.*—Petitioner performed services for Kargman in obtaining a $1,100,000 mortgage loan for the Monroe Street property which Kargman was in the process of purchasing. The loan was in the full amount of the purchase price. As compensation for his services Kargman agreed to give petitioner an

---

[11] In this connection the Commissioner contends that the receipt of the payments by the Moravecs was a violation of sec. 1006, tit. 18, of the United States Code, see fn. 2 *supra* p. 535, as those provisions have been construed in *Beaudine* v. *United States*, 368 F. 2d 417 (C.A. 5), and that petitioner himself was guilty in respect thereof by reason of sec. 2 of that title.

interest in the venture whereby for 24 years petitioner would become entitled to 60 percent of the earnings from the property and would be chargeable with losses in the same proportion; also, in the event of future sale of the property petitioner would become entitled to 60 percent of the net proceeds after Kargman had been reimbursed in full for the funds expended by him in the acquisition of the property. Petitioner in fact acquired that interest on February 18, 1962, when title was finally transferred to The Exchange National Bank under a so-called Illinois land trust, and he thereby became a 60-percent beneficiary of that land trust. On March 8, 1962, less than 3 weeks after he had acquired that interest, he sold it for $40,000. The Commissioner argues that the interest had a fair market value of $40,000 when petitioner got it on February 18, 1962, and that since it was received by him as compensation for services it represented ordinary income to him under section 61(a)(1), I.R.C. 1954,[12] and regs. sec. 1.61–2(d)(1).[13] We agree.

Petitioners do not appear to challenge the basic argument that the fair market value of property received for services must be treated as ordinary income. They seek to avoid the consequences of that result here, however, by contending that petitioner received only an interest in a partnership (limited to a percentage of its future earnings) for his services and that he realized no income thereby by reason of section 721, I.R.C. 1954, as interpreted by regs. sec. 1.721–1(b)(1); that in any event the interest had no value when received; and finally that when petitioner sold his interest there was a termination of the alleged partnership and that he is entitled to an "offset deduction" for his share of an alleged loss of the partnership. We think that none of these points is sound.

(a) Although the relationship between petitioner and Kargman was referred to in some of the documents in evidence as a "partnership," it is by no means clear that petitioner's 60-percent beneficial interest in the land trust was that of a partner. However, we need not pass upon the matter, because we think that even if it were a partnership interest, its fair market value must nevertheless be included in

---

[12] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items; * * *
[13] Sec. 1.62–2 Compensation for services, including fees, commissions, and similar items.

* * * * * * *
(d) *Compensation paid other than in cash.*—(1) *In general.* If services are paid for other than in money, the fair market value of the property or services taken in payment must be included in income. If the services were rendered at a stipulated price, such price will be presumed to be the fair market value of the compensation received in the absence of evidence to the contrary. * * *

income under section 61 and that neither section 721 nor the regulations construing it render section 61 inapplicable here.

Section 721 provides:

SEC. 721. NONRECOGNITION OF GAIN OR LOSS ON CONTRIBUTION.

No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.

As its terms plainly indicate, it provides merely that no gain or loss shall be recognized to a partner who contributes property to a partnership in exchange for an interest therein. The present case simply does not come within these provisions, for it is clear that a contribution of services is not a contribution of "property." [14]

In construing section 721, the regulations state:

Sec. 1.721–1  Nonrecognition of gain or loss on contribution.

(b) (1) Normally, under local law, each partner is entitled to be repaid his contributions of money or other property to the partnership (at the value placed upon such property by the partnership at the time of the contribution) whether made at the formation of the partnership or subsequent thereto. To the extent that any of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services (or in satisfaction of an obligation), section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61 * * *

Relying upon these provisions, petitioners contend that when a taxpayer receives a partnership interest as compensation for services he is required to account for that interest at once as ordinary income if he acquires an interest in partnership capital, but not if he receives only the right to share in the partnership's future profits and losses. It is true that the regulations make section 721 inapplicable in the case of a taxpayer who has received an interest in the capital contribution made by another partner. Cf. *United States* v. *Frazell*, 339 F. 2d 885 (C.A. 5), denying petition for rehearing of 335 F. 2d 487, certiorari denied 380 U.S. 961. But the effect of the first parenthetical clause in the second sentence of these regulations, "(as distinguished from a

---

[14] Cognate provisions of the 1954 Code in sec. 351, relating to nonrecognition of gain or loss in respect to contributions of property to a corporation in return for its stock or securities explicitly state that for purposes of that section "stock or securities issued for services shall not be considered as issued in return for property." However, the quoted language simply codified what was implicit in prior case law; under the predecessor of sec. 351 in the 1939 Code, which contained no such language, there was no suggestion that services might be included within the meaning of "property." See *Mojonnier & Sons, Inc.*, 12 T.C. 837, 847–849 ; *Florida Machine & Foundry Co.* v. *Fahs*, 73 F. Supp. 379, 380–381 (S.D. Fla.), affirmed 168 F. 2d 957 (C.A. 5) ; *Columbia Oil & Gas Co.*, 41 B.T.A. 38, 44–45, affirmed on other issues 118 F. 2d 459 (C.A. 5) ; Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders sec. 3.02 at 70 (1960) ; Mertens, Law of Federal Income Taxation sec. 20.47 at 138 (1965) ; Willis, Handbook of Partnership Taxation sec. 5.03 at 55 fn. 7 (1957).

share in partnership profits),'' upon which petitioners place their sole reliance, is obscure. Certainly, unless section 721 of the Code grants the relief which petitioners seek, they are left subject to section 61. Yet nothing in the foregoing regulations explicitly states that a partner who has received a partnership interest like the one before us in exchange for services already performed comes within the provisions of section 721. The parenthetical language does not so state. At most, it excludes that type of situation from the rule which the regulations affirmatively set forth in respect of readjustments of capital interests; but it does not deal one way or the other with situations described in the parenthetical clause. The reason for this kind of opaque draftsmanship in the regulations is by no means clear to us. However, what is plain is that the regulations do not call for the applicability of section 721 where a taxpayer has performed services for someone who has compensated him therefor by giving him an interest in a partnership that came into being at a later date. Regardless of whether there may be some kind of equitable justification for giving the parenthetical clause some limited form of affirmative operative scope, as perhaps where there is a readjustment of partners' shares to reflect services being performed by one of the partners, we cannot believe that the regulations were ever intended to bring section 721 into play in a situation like the one before us. The Commissioner disavows such intention, and we agree with him. To apply section 721 here would call for a distortion of statutory language, and we cannot believe that the regulations were ever intended to require that result. Certainly, in the absence of a clearer statement to that effect, we will not approve any such interpretation of them as is requested by petitioners.

(b) The alternative argument that petitioner's interest in the venture had no value at the time he acquired it is unconvincing. To be sure, as he points out, the December 15, 1961, agreement between him and Kargman provided that neither party could assign it without the consent of the other. But even if that restriction on assignment carried over to the interests in the land trust, which were explicitly declared to be assignable, such restriction would not deprive petitioner's interest of any fair market value. It was a conditional, not an absolute restriction, and, at most, it would merely be a factor to be taken into account in determining the amount of such value.[15] Cf. *Estate of Pearl Gibbons Reynolds*, 55 T.C. 172, 188–191, and cases cited therein; *Heiner* v. *Gwinner*, 114 F. 2d 723 (C.A. 3), certiorari denied 311 U.S. 714. In the present case petitioner sold his interest to Liederman less than 3 weeks after he received it for $40,000. Presumably—and peti-

---

[15] *North American Philips Co., Inc.*, 21 T.C.M. 1497, 1506, P–H Memo. 62–1658, 62–1669; cf. *Edward C. Victorson*, 21 T.C.M. 1238, 1246, P–H Memo. 62–1370, 62–1379, affirmed 326 F. 2d 264 (C.A. 2).

tioner has not shown otherwise—Liederman acquired the interest subject to the same restriction (if any) ; yet he was willing to pay $40,000 for it. On this record, we cannot say that the Commissioner erred in valuing petitioner's interest at that amount.[16]

(c) Petitioners have also urged that they are entitled to a deduction for petitioner's share of partnership loss stemming from the "termination" of the partnership. They rely upon sections 708 [17] and 752,[18] I.R.C. 1954. Cf. regs. sec. 1.708–1(b)(1)(ii). Petitioners urge that on termination of the partnership, each partner was entitled to take into account, in determining his distributive share of the partnership's taxable income or loss, his distributive share of the partnership's unamortized loan expense of $33,000. See sec. 702(a)(9) ; [19] cf. *Anover Realty Corp.*, 33 T.C. 671, 675. However, regardless of whatever validity their argument may have, they have produced no evidence of the venture's income for the period during which Kargman and petitioner

---

[16] Even if one of petitioners' two foregoing arguments had prevailed, it would still not be altogether clear that the $40,000 petitioner received on the sale of his interest in the land trust would qualify as a short-term capital gain. Although sec. 741, I.R.C. 1954, provides for capital gain treatment on the sale of an "interest in a partnership," it is not at all clear that it contemplates the sale of a right to receive income in the future in return for a lump sum payment which would enable a taxpayer to convert what would otherwise be taxable as ordinary income into capital gain. Cf. *Commissioner* v. *Gillette Motor Transport, Inc.*, 364 U.S. 130, 134–135 ; *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260, 265–266 ; *Hort* v. *Commissioner*, 313 U.S. 28 ; *Nat Holt*, 35 T.C. 588, 599–600, affirmed 303 F. 2d 687 (C.A. 9). In view of our disposition of this case, however, we need not reach this question.

[17] SEC. 708. CONTINUATION OF PARTNERSHIP.

(a) GENERAL RULE.—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

(b) TERMINATION.—

(1) GENERAL RULE.—For purposes of subsection (a), a partnership shall be considered as terminated only if—

\* \* \* \* \* \* \*

(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

[18] SEC. 752. TREATMENT OF CERTAIN LIABILITIES.

(a) INCREASE IN PARTNER'S LIABILITIES.—Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

(b) DECREASE IN PARTNER'S LIABILITIES.—Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

(c) LIABILITY TO WHICH PROPERTY IS SUBJECT.—For purposes of this section, a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property.

(d) SALE OR EXCHANGE OF AN INTEREST.—In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

[19] SEC. 702. INCOME AND CREDITS OF PARTNER.

(a) GENERAL RULE.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

\* \* \* \* \* \* \*

(9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

were associated. Consequently they have failed to carry their burden of proof in establishing the purported partnership loss. We uphold the Commissioner's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*